ECB USA, Inc. v. Savencia Cheese USA, Inc. v. Savencia Cheese USA, Inc. v. Savencia Cheese USA, Inc. v. Savencia Cheese USA, Inc. v. Savencia Cheese USA, Inc. v. Savencia Cheese USA, Inc. May it please the Court. David Marco on behalf of the Plaintiffs and Appellants in this case CCB USA and Atlantic Ventures, your Honor this is primarily a case that involves the long armed statute section one B whether or not a party committed a tortious act within the state of Florida the principle issue is whether this group of co-conspirators as alleged in the complaint committed torts directed at the state if any co-conspirator committed a substantial act directed at Florida then there is personal jurisdiction as to all co-conspirators in fact so long as not contradicted by a relevant affidavit or a provision in one of those affidavit those allegations are sufficient for us to have prevailed in the court below but at the time of the fraud as alleged in the complaint when the fraud let's break it up into time segments at the time the fraud began as alleged in the complaint there was no connection to Florida no company was based in Florida no defendants were based in Florida the plaintiffs and their shareholders owners principals were not based in Florida right nobody was based in Florida at the beginning so no your honor the at the time the conspiracy started the answer to that is true at the time that the fraud commenced it is not true so the fraud commenced begins on October 1st not not 2014 when the letter of intent is created for the purposes of and is transmitted to Florida to mr. Freeman who was local deal counsel in Florida and that letter of intent had two fraudulent statements in it the first one is that mr. Voss was the ensconced day to day manager of the company CEO and president the second one is that the losses that had been explained subsequently even verbally were attributable to utilizing that subsidiary that was being sold as essentially a zombie entity buy for a dollar sell for a dollar and therefore the were artificial and those two frauds were in the LOI and were transmitted into the state of Florida to mr. Freeman who was not casual he was local deal counsel and so the frauds are the are the series of events that are essentially a continuing fraud that begin in the fall of 2014 else what has a connection to Florida Oh plenty your honor so mr. Freeman received multiple drafts of a purchase agreement each containing as stated in the complaint and very particularly identified fraud after fraud after fraudulent statement company is operating in the ordinary course of business the that there has been no substantial changes to the company's operations or management etc etc none of that was true so if we go back in time at the beginning of the conspiracy what happens so on June 30th 2014 as alleged in the complaint mr. Voss is sacked removed completely as CEO and president of the company and is left only nominally in a position for purposes of trying to find a pigeon to sell the company to and otherwise had no meaningful role in the operation of the business those documents also sent to others aside from mr. Freeman like the principles of the plaintiffs I'm sure that they were they were accessed by various people but the deal counsel who was the fraud committed in Florida because if a fraud is committed in Florida and Georgia it is also committed in Florida and this is not a well-formed thought I'll just preface it by saying that one of the one of the arguments from the other side and something that the district court sort of hit on is it just seems odd that the the location of the deal counsel for a deal that was negotiated in France and didn't have Florida entities involved with it would be dispositive for personal jurisdiction given that the the defendants didn't choose the deal counsel have they really purposefully availed themselves of the state where the deal counsel happens to be located like what do you say with just that concern that this is sort of I don't know it's kind of random so it's very far from random so the purchase agreement every draft of it it's also stated in the complaint identified that Miami would be the paid at place of closing the two buyer entities are to Florida Miami could be the place of closing right it would be is what it says and it happened it wasn't it was virtual so that's an interesting question your honor so here we are in the modern world modern world just because they cut a transaction occurs virtually doesn't mean it doesn't still involve human beings mr. Freeman is identified and it's pled in the complaint that he was the closing agent he received the documents in Miami Florida he received the money in Miami in 2014 15 million dollars in 2015 in the second half of the closing after the headquarters even had already been moved to Florida in January of 2015 and so when money flows through those accounts documents documents and due diligence flow through hit the Miami Florida lawyers it isn't just a coincidental thing so there's this New Mexico case the name escapes me where council is in New events happened in somewhere in the Midwest that is not this instance ECB USA and Atlantic Ventures are Florida companies well they are now I mean right I mean in December of 2014 and Voss was was already president of those companies on December 9th of 2014 or December 5th maybe of 2014 the point is is that the continuation of the frauds that began in the fall of 2014 continued to go on and on and on including into 2015 so when 15 million dollars is paid from a Florida account that is in and so as this court has held an injury in Florida is the same as an act directed at the state of Florida so even just those two payments alone is sufficient to establish it well let me ask you a question you know I'm supposed to look at the traditional notions of fair play in substantial justice we've all agreed the individual defendants at least the time didn't reside in Florida and this action largely duplicates an action already pending in Delaware why does the exercise a personal jurisdiction over these individual defendants comport with traditional notions of fair play and substantial justice well so if I could quote judge Jordan in Devoy a Expedia was not in Florida but the injuries that occurred in Florida were sufficient to meet those standards in this case we have the same situation because what respectfully judge Jordan said is it was reasonable for Expedia to expect that their website would be accessed in Florida in this case every draft of the purchase agreement says Morgan Lewis Miami Florida they taught but Expedia in that case targeted Florida residents through their advertising and so there was purposeful availment because it wasn't just that they had a website that was accessed in Florida it was also that they were specifically targeting Florida residents with their advertisements and thereby expecting that at least some Florida residents would book vacations with them but is this case the same or similar so lychee Adelie is the same a single act directed at the state of Florida but we're not that limited in this case you have the parties intentionally expecting that this transaction would close in Florida that's significantly different than not having any idea and it's just like a random event that it happened to happen in South Florida they knew that mr. Freeman was accessing the data room that contained continual statements of fraud two documents of the data room one that says that boss is the CEO and president of the company and the second one which identifies nobody else that's actually running the company inside the the the the data room that was downloaded they gave him access to that data room it is it it is reasonable under constitutional analysis that when somebody gives a Floridian access to a data room that agent for the disclosed principle accessing it from that state they knew they were committing a tort in the state and that's all 2014 your honors think about 2015 stop right there because I want I want to can you give them an extra minute Stephanie please oops I'm so sorry no no you didn't go over your time I'm giving you an extra minute because I want you to discuss the 12b6 dismissal with regards to seven see ya yes your honor right you've got you've got two minutes okay so paragraphs 27 through 29 of the complaint lay out the beginning of of the expectations and the conspiracy if you'll forgive me your honors whoops the distribution agreement fraud is Seventy a cheese conspiring with the parties to gut rights that were given to ECB USA and Atlantic ventures in the purchase agreement regarding preferences that they were entitled to and we specify what the distribution agreement was how it was was on a we were unaware of the fact that these rights were being taken from us that they used Voss as their inside man that he had a personal stake the complaint though is a little short on that fraud claim with regards to how those distribution the favorable distribution agreements for example the discounts were taken away it says that it happened but the complaints not really clear about how that happened were they negotiated away where new contracts entered into a new agreement was entered into and I believe it says a new distribution agreement that stripped all those rights we don't have any we don't have any there's no content to that we don't know what that new agreement is or well it's stripped it and what it what it may be replaced it with your honor we replaced it with nothing it took away those rights and but I would just say it it's not a fraud count right it's so it's a it's an aiding and abetting count and so that the claims as it relates to that don't fall to the same standard of pleading requirements it's sufficient to put on notice a party on the other side that these rights were taken away so I mean that's I just think it does meet it if you look at the provisions of it you'll see that we do plead that there was rights they were they did exist in the original negotiation they were taken we were unaware of them what about just with respect to Seventia I just when I look at the the fraud allegations I just see it seems like you're sort of saying like this person this person this person did something and then Seventia cheese was like participated or was I mean where's like a specific allegation of fraud as specific to Seventia cheese it's 155 allegations your honor I hate to just formulate this generically I mean can you just give me one because I mean like I say when I when I see I think I feel like if I do I mean I can't do it actually on a PDF but if I did like a search find for Seventia cheese I just see a lot of stuff that says like these people like worked in concert and like Seventia cheese like also did this and they acted in furtherance of this conspiracy and it's just hard for me to find something that if you ask me like what did Seventia cheese do I have a hard time answering that question well so the answer to the question is that they they conspired with Voss and the co-conspirators to take away through a new distribution agreement at the Schrader Seventia cheese level that stripped rights that belonged to ECB USA without their knowledge of what was going on right so it's hard it's sort of like a tortious interference claim I mean I know you make that's one claim yeah it's an aiding and abetting of a of a of a of a breach of fiduciary duty right it's Voss's breach and we think it meets the pleading requirement standards for that breach of fiduciary duty count but the good news is is I get a rebuttal so I'm going to grab the provisions that I think may be more helpful to you okay mr. Marco thank you very thank you your honors mr. Kennelly thank you your honor may it please the court my name is Michael Kennelly and I represent the defendants this case is an offshoot as judge Covington was gesturing toward of a long-running dispute over the 2014 sale of a New Jersey based corporation Schrader Foods and the main litigation over this corporate transaction was initially brought in Florida State Court but was removed and transferred to the District of Delaware through the forum selection clause and the parties are currently gearing up for trial in that action which starts next month and that action in Delaware involves the actual party to the stock purchase agreement Zausner Foods and it includes not just tort claims like fraud and conspiracy but the type of contract claims you'd expect to see in a business dispute of this sort let me ask you a question about the individual defendants here in the long-arm jurisdiction tell me why was the individual defendants sending documents with alleged misrepresentations into the virtual data room not a torturous act directed at Florida given that the individual defendants knew Appellant Steel Council would access and review those misrepresentations in Florida as part of the due diligence process I think for several reasons your honor and I think it does help to sort of go sequentially through different periods of the of the sequence of events so mr. Marcos said that the fraud here began October 1st 2014 and it wasn't until October we don't know exactly when of 2014 that the ECB representatives that's the principles of the plaintiffs not the plaintiffs themselves hired mr. Freeman in paragraph 78 of the amended complaint so they did not know when they were initiating discussions with the ECB representatives that they would have deal council in Florida that happened at that point and at that point in time the plaintiffs themselves the Florida incorporated entities did not even exist they didn't exist until December the data room that was set up in October of 2014 and this is from the original complaint docket number one was not just accessible to mr. Freeman it was accessible to the ECB representatives and to their consultants and their lawyers throughout a variety of locations that matter well because it shows that the placing of documents in the data room wasn't directed to mr. Freeman wasn't directed to Florida it was actually accessible these are paragraphs 64 and 68 of the original complaint across the whole world depending on where the people involved in the deal with these foreign based principles who are in Guadalupe in the Caribbean not even in the United States and they were French nationals that's where the data room is accessed by somebody in Florida I'm sorry your honor based on the allegations in the complaint the defendants knew that the materials placed in the virtual data room would be accessed in Florida because the plaintiffs had local deal counsel in Miami right yes by the attorney of the ECB representatives and I think on this point so if you know that someone is going to be accessing data how is that different than sending assume there was no virtual data room and that in the old-fashioned way of decades ago the defendants or those working for them had sent paper copies of every allegedly fraudulent document to everybody wherever they resided and a set of those copies were sent to mr. Freeman in Miami and accepting the allegations and the complaint is true some of those documents contain fraudulent representations or fraudulent statements for example about mr. Voss why would there not be personal jurisdiction with respect to at least some of the defendants if the materials were sent the old-fashioned way hard copy well I have I have two answers to that your honor one's a practical one and one's the doctrinal one the practical one is that on a major corporate deal the parties might have representatives might have attorneys and might have consultants across the entire country might be in many countries and if that mere sending of deal related documents to their chosen agents who are not even employees or officers or investors in the company is enough to trigger personal jurisdiction you really don't have much of a limitation in a transactional deal like that and then so to break it back more in terms of the doctrine I would distinguish between the long-arm statute analysis and the due process analysis I'm not talking due process right now okay so let's just talk was meant long arm okay just long arm so in the long arm analysis under this courts precedent at a minimum there needs to be this is from your honor's opinion for the court intentional conduct aimed at the forum state and caused harm that the defendant should have anticipated would be suffered in the forum state plaintiffs have an alleged what harm their communications with mr. Freeman caused in the state of Florida at the time they had no operations in the state of Florida they had no officers no property no employees in Florida so they don't have any injury in the state of Florida at the relevant time here they began to transition Shradder Foods operations remember these are two corporations plaintiffs ECB USA and Atlantic Ventures that were formed for the purpose of this deal and and to acquire Shradder Foods which was based in New Jersey the complaint alleges in paragraph 143 the amended complaint that the decision to move Shradder from New Jersey to Florida was memorialized first in January of 2015 and it wasn't until 2017 by the amended complaints analysis in paragraphs 62 paragraph 62 but the completion of that move happened so we don't know between 2015 and 2017 what if any injury occurred in Florida or was suffered in Florida so even if we're just purely looking at this from the long arm statute analysis that this court has adopted plaintiffs haven't satisfied the test and again I don't think that they've aimed there's any alley there's any positive allegation that the individual defendants aimed anything at the state of Florida this is very much unlike Expedia in that case where Expedia was driving a substantial part of its revenue as a corporation from its Florida business including with respect to the confiscated properties in that case and and here the end of there's no allegations that the individual defendants were driving revenue from Florida so that's my answer on the long arm statute so so I think that's a that's that's a good answer on sort of the first sort of aspect of the alleged fraud it just seems to me like there's sort of two kinds of things here they they've alleged sort of like and I mean they're either sort of alleged pre deal fraud and like post deal fraud where they that you know there was this effort to sort of undermine the the agreement that they had and that there is that second the sort of the back half of the fraud why isn't that enough to for personal jurisdiction similar reasons your honor there's no allegation in the complaint that plausibly ties the negotiation of that 2015 distribution agreement if that's the part of it your honor is talking about to Florida in the appellate briefing that plaintiffs submitted they assert that Voss was in Florida after the 2015 or the end of 2014 closure but there are no allegations in the complaint and I went back and looked at all of the paragraphs in the amended complaint cited about who was located where when and Mr. Voss's location was never specified at most there were allegations that he spent some time in Florida but not in we don't know where he negotiated the distribution agreement or when exactly that those acts occurred and this should not have been a difficult factual allegation for plaintiffs to make because remember Mr. Voss was working for them during this post-closing period he was in charge of the company they had just acquired and so if they they should know as well as anybody certainly better than my clients where Mr. Voss was located during the relevant period but there aren't any allegations that he was operating in Florida and again the completion of the move of Schrader's headquarters to Florida didn't happen until 2017 years later so we've been talking about the long-arm statute of course as your honors know there's also the due process analysis the Florida Supreme Court has itself said that that's a more restrictive analysis than the long-arm statute and I think my core for the due process point is the one that the Supreme Court identified as a problem in Walden versus Fiori where the court specified that a due process requires that a defendant be hailed into court in a forum state based on his own affiliation within the state not based on the random fortuitous or attenuated contacts he makes by interacting with other persons affiliated with that state and I think here plaintiffs well their representatives decision to hire a Florida based deal counsel is a random fortuitous and attenuated contact with respect to that statement can't be taken at face value because if you have unless I've completely misread personal jurisdiction law if you have someone who crosses in from Florida to Georgia in a car and does so only for five minutes because he or she took a wrong turn somewhere and intends to go back into Florida and during those five minutes causes an accident with someone on a Georgia highway you've got specific personal jurisdiction which is constitutionally okay and that's a random fortuitous act the person never intended to go to Georgia had no other contact with the state of Georgia but caused a tort in the state of Georgia and probably could be hailed into court there I would think yes I I don't disagree with that your honor in that case though it's the defendants action that created that contact of Florida here it was plaintiffs action in retaining Miami based deal counsel and I think the best case I could identify on this exact point how I interpret Walden with respect to sending emails to an attorney in a different in the forum state is the Eighth Circuit's decision in Peterson versus Frost although Mr. Marco did also identify the Medina versus Lorenzo case from the District of New Mexico which is maybe the most factually analogous where the plaintiff hired an attorney in the floor forum state and the district court there said that doing that was not enough to satisfy due process but in the Eighth Circuit case the attorney at issue was actually the defendants own attorney and the plaintiff in the action and that plaintiff attorney had moved to Minnesota and said that the emails from the defendants to him in Minnesota which were part of the alleged fraudulent scheme were enough to establish personal jurisdiction in Minnesota and the circuit said that no that was just the attorney's personal decision to relocate to Minnesota but the defendants hadn't done anything to try to target Minnesota for any of their business dealings or anything like that and so under Walden the circuit said that was not enough and under the effects test that wasn't enough so I think that case is a harder case than our case where you know Mr. Freeman's not a party to the transaction or the litigation and he wasn't somebody we hired he was somebody that the plaintiffs unilaterally hired and then it required us to communicate with and I'll just also know would this be different if the same facts but there were negotiations that took place in Miami at the plaintiff's attorney's office I think it would be a much harder case your honor I can't say exactly without knowing all of the facts but I think if there were actual negotiations alleged in Florida it would be harder to see how that at least for some of the defendants you know who participate in the you know here one of the issues we have is that there are five individual defendants and they're lumped all together in the complaint but but I do think that you know that's probably enough to I don't know I'd have to think more about it but I guess so you know because their their argument is that this records room was sort of the equivalent of that right is the sort of like this is where the documents were exchanged this is sort of this virtual you know you can envision if you go to a closing that their documents pushed across a table and there's like in-person you know document review and stuff like that and this was this sort of virtual record room I guess because it seems like I mean I think their strongest argument is that by putting something in that virtual space knowing that there was a Florida attorney who was going to access that on behalf of the plaintiffs that that was that was the equivalent of like sort of coming to Florida to negotiate the deal what do you say about that well two things one is I mean our declarations say that the final deal negotiations took place in France so I just don't think that's a colorable characterization of what happened here but again I also think that just practically speaking if it's enough to have your attorneys I mean major law firms have including my own have a turn at offices all over the country and they have may have attorneys working remotely and if merely having a shared data room in a deal is enough to establish personal jurisdiction everywhere that one of those attorneys was working I mean that's a big open courtroom door across the country documents said that closing would happen in Miami so yes I'm glad your honor brought that up because I wanted to identify the page of the for this is document 41 6 page 50 out of 106 and here's the language a closing of the transactions dot dot dot shall be held on December 29th 2014 at the artwork offices of Morgan Lewis in Miami or remotely and that's what happened they were the closing here happened remotely and I see I'm running low on time but so I would can you give him two minutes please Stephanie can you address the 12b6 dismissal with regards to subvention please yes thank you your honor that was where I wanted to go so I think the overarching problem with the plaintiff's claims against events he achieves is that on key elements of each of the claims the allegations especially related to seven C achieves which remember is is one subsidiary of zausner foods and the one that entered into the distribution agreement the allegations about seven C achieves itself are extremely thin and really just restate the elements of the claims in conclusory terms let me ask you a question why wasn't seven C achieves is execution of the distribution agreement an overt act and furtherance of the conspiracy so I think for two reasons so the first reason is that the only agreement that plaintiffs in anywhere in the amended complaint identify involving seven C achieves itself is that 2015 distribution agreement so the signing of that agreement isn't in furtherance of the agreement it is the agreement I think that's what the district court was getting at but but even setting that aside I mean under Florida conspiracy law we take the terror case but it's not the only one that has said this you know conspiracies in a freestanding claim you also need the underlying wrong and that needs to be plausibly pleaded and with respect to seven C achieves that the wrongs that they're alleging underlie the conspiracies fraud constructive fraud aiding and abetting fiduciary duty those are none of those are plausibly alleged as to seven C achieves you know that really at the core of their theory seven C achieves wanted to get better pricing in its distribution agreement with with Schrader and that hurt harm Schrader supposedly and and but that's that's just freedom of contract that's just doing business that's not a conspiracy or aiding and abetting a fiduciary breach and with respect to fiduciary it is if what it can be if you allege that one of the insiders in the new Schrader through EBC and Atlantic was somebody who had been previously controlled by others and really had no say in the running of Schrader before the acquisition it becomes a little bit more plausible if you think of it that way yeah I understand your honor but again mr. Voss owned 45% of Schrader after Schrader after the after the deal closed and so the idea that he was undermining his own investment substantial investment by you know breaching his fiduciary duties to the company he owned 45% of you know you'd have to have some factual substance behind that theory and especially when this is a just a you know typical arm's-length business transaction between a distributor and a counterparty under Woods versus Barnett Bank of Fort Lauderdale you need to have some more factual substance behind the allegations to show that what was actually happening was wasn't freedom of contract but was aiding and abetting some sort of fiduciary breach or other comparable wrongdoing right thank you very much thank you your honor it pleased the so to answer your question your honor it's paragraph 36 and if I'm sure you sort of summarized it back to me so that's probably where you were looking and respectfully we believe that that lays out a sufficient amount of allegations to satisfy 12b6 considering it is not the heightened standard it is simply to put a party on notice as to who the parties were what they were doing what the actual violation of law was to judge Covington's point the distribution agreement is not the fraud the fraud is the distribution agreement is the result of the fraud and whether or not Civencia cheese had a freedom of contract has nothing to do with the that mr. Voss as the inside man traded those rights away behind the back of ECB because they had separate and secret agreements with him to compensate him for his dirty deeds and that is pled into the complaint he even got a percentage for pretending that he was CEO of the company he was supposed to receive 25% of the sale of Corman it's written into the it's pled into the agree amended complaint he was he was compensated well and to argue whether or not those pleadings are sufficient without counter affidavits to contradict any of it defies the principle that as alleged they are accepted as true for purposes of a motion to dismiss and the one thing I would like to sort of articulate to the court that I think I failed to do in the beginning is that when this fraud began in 2014 and continued this court looks to where injury occurred and the simple fact that payments were made in both 2014 and 2015 from Miami Florida from bank accounts in Miami Florida alone satisfies the requirements of establishing personal jurisdiction it is where the injuries occurred they happened right here in this town right so at the end of the day your honors we think that we have satisfied the requirements if Schrader and ECB and Atlantic had never ever moved to Florida would your argument be the same oh absolutely because mr. Freeman is not a casual person and he is an agent of a disclosed principal he is the same as the principal so when he is in Miami Florida and he is the person that held those signatures that escrowed those documents that distributed those monies that reviewed the frauds that were in the data room on behalf of our client among others right in and outside the state of Florida it's not possible to say well there's Freeman and there's the plaintiff representatives and there's the plaintiffs Freeman equals them right so the Cruz case that we cite which is a Florida court case says that attorney is an agent of a principal right there's no there's no daylight between the two of them so mr. Freeman is as much part of injury to mr. Freeman he's the agent of a principal so he stands in shoes of the principal for a lot of things but he doesn't stand in the shoes of the principal for injury tort purposes he's not the plaintiff but he distributed the money on behalf of our client from Miami Florida our clients paid money into Miami and out of Miami and to say that there's no that it's sort of a random concept and that he's a satellite off in outer space which is essentially how our friends on the other side are characterizing this doesn't really capture the agency principal relationship that's going on here he was our deal counsel the deal was to close in Miami Florida a virtual closing in Miami doesn't occur by bots it occurs by human beings mr. Freeman received those documents he paid the money in Florida the injury occurred in Florida and the 11th Circuit has held repeatedly it has held it in Posner where an injury occurred in Florida your honor and Devoy a stated if the occurred in Florida it is saddest it satisfies the requirements of 1b under the long arm statute and that is all that we need to do right is demonstrate just injury alone okay mr. Margo thank you very much thank you for your time your honor thank you both